### JOHNSTON et al. v. SHAW et al.

(Circuit Court of Appeals, Ninth Circuit. September 5, 1911.)

#### No. 1,840.

1. MINES AND MINERALS (§ 71*)—RIGHTS UNDER LEASE—PROPERTY SUBJECT TO ATTACHMENT.

A., having purchased the interest of his partner in a mining lease containing an option to purchase, contracted with J. that he should have full control of the ground in consideration of his advancing all the money necessary to pay operating expenses until "said parties" to the agreement should "commence to hoist pay," after which all the profits of the mine "coming to said parties hereto" should be taken possession of by J. to reimburse him for money so advanced until he should be paid in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

full, after which payment of the profits from the mine should be paid to A. until $3,500 was paid, to pay A.'s creditors, and that thereafter all profits should be divided between the parties share and share alike, J. agreeing to mine "for the joint profit and benefit of the parties hereto," and that the agreement should continue and exist for the full term of the lay or lease agreement. Thereafter A. assigned the lease to J., taking another agreement, however, that the parol contract should not be affected in any way thereby. After J. had received from the mine sufficient to reimburse him for his outlay, and while the profits were being received by him for the purpose of paying the $3,500 due to A. for the benefit of his creditors, A.'s interest in the mine was attached. *Held*, that under such agreements A. and J. were tenants in common of the property held under the lease, and that A.'s interest was subject to attachment notwithstanding J.'s possession.

[Ed. Note.—For other cases, see Mines and Minerals, Dec. Dig. § 71.*]

**2. ATTACHMENT (§ 332*)—REDELIVERY BOND—LIABILITY OF SURETIES—SPECIAL EXECUTION.**

Carter's Ann. Code Civ. Proc. Alaska, § 145, provides that the marshal may deliver any of the property attached to the defendant or to any other person claiming it upon his giving a written undertaking therefor, executed by two or more sufficient sureties, engaging to redeliver it or to pay the value thereof to the marshal, to whom execution on a judgment obtained by the plaintiff in that action may be issued. *Held*, that where plaintiff in attachment recovered a judgment on which an execution was issued requiring the marshal to satisfy the judgment with interest out of the personal property of the debtor, and the marshal levied on the property attached and surrendered under a redelivery bond and no other, and returned that the principal in such bond refused to deliver the property or pay the value thereof, such return was sufficient to fix the liability of the principal and sureties on the redelivery bond without a special execution authorizing and commanding the marshal to sell the attached property.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 1186–1192; Dec. Dig. § 332.*]

**3. ATTACHMENT (§ 217*)—JUDGMENT—CONSTRUCTION.**

Where a judgment recited that it appeared to the court that certain property of the attachment defendant had been attached in the action, described the same, and that it was ordered that the property and the debtor's interest therein be sold to satisfy plaintiff's demands, the judgment showed on its face that the court and not the clerk ordered the sale of the attached property, and was therefore not objectionable on the theory that the clerk in entering the default of the defendants in attachment had no power to order a sale of the property attached.

[Ed. Note.—For other cases, see Attachment, Cent. Dig. §§ 735–752; Dec. Dig. § 217.*]

**4. ATTACHMENT (§ 349*)—ACTION ON BOND—PLEADING.**

Where, in an action on redelivery bond, defendants did not controvert the allegation of the complaint that after the default of the attachment defendant "was duly entered" by the clerk of the court, the clerk thereupon "duly entered judgment therein" against the debtors, a copy of which judgment was annexed as an exhibit, defendant thereby admitted that the judgment, including the order of sale, was duly entered as an order of the court, and not a mere clerk's order.

[Ed. Note.—For other cases, see Attachment, Dec. Dig. § 349.*]

In Error to the District Court of the United States for the Fourth Division of the Territory of Alaska.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Action by C. M. Shaw and another against Harry Johnston and others. On a redelivery bond to secure the release of certain property attached at plaintiffs' instance in an action by them against certain others. Judgment for complainants, and defendants bring error. Affirmed.

On the 16th day of January, 1907, Wm. J. Nolan leased to Samuel Applebaum and H. H. Darud a certain placer mining claim known as No. 15 Below Discovery, on Cleary creek, in the district of Alaska, with the privilege of entering and mining for gold. This lease provided for the payment of a 30 per cent. royalty to Nolan and contained an option of purchase in favor of the lessees. Applebaum and Darud entered into possession of the claim, sunk a shaft to bed rock, and put up a bunkhouse; but, being without sufficient funds to further prosecute the work, Darud withdrew from the enterprise, and Applebaum on September 5 and 7, 1907, made and entered into three certain contracts in writing with Harry Johnston, one of the plaintiffs in error, under which Johnston, with the consent of said Wm. J. Nolan, went into possession of the said mining claim, and furnished all the funds and purchased and provided all the machinery, tools, and appliances necessary for the proper mining operations thereon, worked and mined the same, and was so in possession at the time of the attachment in question.

The agreement of September 5, 1907, contained the following provision:

"Whereas the said party of the first part herein (Applebaum) is desirous that H. R. Johnston shall take full control, charge and supervision of the working of said ground and to that end and purpose hereby enters into the following agreement—that in consideration that the said H. R. Johnston will take full charge, control and supervision of the mining, operating and working of said mine as hereinbefore mentioned, and continue the same, the said party of the second part is to receive one-half of the net profits of said mine and undertaking upon the following conditions:

"The said H. R. Johnston is to advance the money necessary to pay the operating expenses now until the said parties hereto shall commence to hoist pay, and thereafter all the profits of said mine coming to the said parties hereto shall be taken possession of by the said H. R. Johnston to reimburse him for the money so advanced, and until he shall be paid in full. That thereafter and after the payment of the said money to the said H. R. Johnston so mentioned all profits taken from said mine shall be paid to the said party of the first part herein until the sum of three thousand five hundred is paid, which sum is for the purpose of paying the creditors of the said Samuel Applebaum. That thereafter all profits taken from said mine shall be divided between the parties hereto share and share alike. And in consideration of the foregoing the said H. R. Johnston hereby agrees to take full control, management and supervision of said mine and premises and work and mine the same according to his best ability and endeavors in a minerlike manner and for the joint profit and benefit of the parties hereto."

On September 7, 1907, Applebaum assigned the lease of the property to Johnston, and on the same day the parties entered into an agreement which contained the following provision:

"Witnesseth: That whereas the party of the first part (Applebaum) did on this date sell, convey, assign, transfer and set over unto the party of the second part herein (Johnston) all the right, title and interest of the party of the first part in and to the lay or lease agreement which is the subject of that certain agreement entered into by and between the parties hereto on the 5th day of September, 1907.

"Now therefore, it is hereby mutually agreed by and between the parties hereto that the said agreement made and entered into on the 5th day of September, 1907, between the parties hereto shall be and remain in full force and effect and shall not in any way be affected by the assignment this day made,

"It is further hereby mutually agreed that when the party of the first part hereto shall have paid or caused to be paid to the party of the second part

all of the money advanced by the party of the second part for the operating expenses upon said ground, then the party of the second part will convey to the party of the first part a one-half interest in and to said lay or lease."

In order to properly mine the claim it was necessary for Johnston to use, and he thereupon purchased, a boiler, hoist, and engine, together with all appliances, fittings, and tools then located on the claims, paying therefore the sum of $1,450. He also purchased wood to the amount of $1,229.50. These articles were purchased for use in working the mine, and under the agreement of September 5, 1907, the mine was to be worked for the joint profit and benefit of Applebaum and Johnston.

About eight months thereafter, and while Johnston was still in possession and carrying on his mining operations under his contracts with Applebaum, an action was instituted by the defendants in error in the District Court at Fairbanks, Alaska, against Applebaum and Darud upon a promissory note and certain accounts for goods sold and delivered, etc., for certain sums amounting in the aggregate to $5,124.98, and interest. In this action a writ of attachment was issued and placed in the hands of the United States marshal, who, on May 25, 1908, without taking possession of any of the property in question, executed the same by serving upon Johnston a copy of the writ "together with a notice of garnishment specifying the property attached," to wit, "all of the moneys, or personal property of the within defendants, or either of them, due from or in the possession or control of H. R. Johnston." Johnston, upon being served with this notice of garnishment, made and gave to the marshal a written certificate to the effect that he was not indebted to Applebaum and Darud or either of them in any sum whatever. Thereafter, on May 29, 1908, the marshal returned to the mining claim in question, with the same writ of attachment, and further executed the same by attaching all of the defendants' rights, title, and interest, in and to the remains of dump of gold-bearing ground, gold in sluice-boxes, boiler, pump, and all fittings, all wood (eight to ten cords) on said claim, by delivering a certified copy of said writ, together with a notice of the property attached, to H. R. Johnston, the person having possession of the same, and by putting a keeper in charge of said property, and at 16 Below Cleary Creek, Alaska, on the 29th of May, 1908, by attaching all of the defendants' right, title, and interest in and to a 6x6 little Giant Hoist, by delivering a certified copy of said writ, together with a notice of the property attached, to S. Weise, the person in possession of the same. Thereupon Johnston, in order to have his property restored and to enable him to go ahead with his work, furnished the redelivery bond in suit in this action. The bond is in the sum of $5,824, with plaintiffs in error Bonnifield and Aitken as sureties.

Thereafter on June 29, 1908, a default judgment was entered by the clerk against Samuel Applebaum and H. H. Darud in the sum of $5,496.28, together with attorney's fee of $500 and costs. In such default judgment there was embodied an order that the same should be enforced against the joint property of both defendants and the separate property of Applebaum, that execution issue, and that all interest of Applebaum in the property be sold to pay plaintiffs' demands. A general execution upon this judgment was thereafter issued, which was executed by the marshal by making a demand upon Johnston who refused to deliver the possession on the ground that the property belonged to him. The present action was accordingly brought on the bond.

In its second amended complaint on the bond, the proceedings in the attachment suit are set forth. It is alleged that the property attached was the property of Applebaum, the defendant in that case, and that it was of the value of $6,000; that Harry Johnston, the defendant in this action, claimed the property as his own. It is alleged that a redelivery bond was given by Harry Johnston as principal and Samuel A. Bonnifield and Thomas A. Aitken as sureties, in the sum of $5,824, in and by which, in consideration of the delivery of said property to the said Harry Johnston, said defendants jointly and severally undertook and promised to "redeliver said property or pay the value thereof to the United States marshal, to whom execution upon a judgment obtained by the plaintiffs in said action may be issued."

It is alleged that in consideration thereof the property so attached was by the marshal delivered to Johnston; that Applebaum and Darud made no

appearance whatsoever in the action, and on about the 29th day of June, 1908, the clerk of the court entered judgment against them; that after the entry of the judgment an execution was issued thereon and delivered to the marshal; that the marshal duly demanded of Johnston the redelivery of said property or the payment of the value thereof, but neither Johnston nor defendants Bonnifield or Aitken have redelivered the said property to the marshal or paid the value thereof to the marshal, nor paid any sum whatsoever as provided in their undertaking; that no part of the judgment has been paid. Plaintiffs demanded judgment in the sum of $5,824 with costs and disbursements.

Plaintiffs in error demurred to the complaint on the ground that it did not state a cause of action. The court overruled the demurrer, and plaintiffs in error then answered, alleging that the property attached was, at the time of the execution of the writ of attachment, the property of the defendant Johnston. Defendants in error filed a reply, putting in issue the affirmative defense.

The case was tried before the court and a jury. A verdict in favor of the plaintiffs in that case, defendants in error in this case, for the sum of $3,496.44, was rendered, upon which judgment was thereafter duly entered. From this judgment the plaintiffs in error sued out this writ of error.

John McGinn, Campbell, Metson, Drew, Oatman & Mackenzie, and E. H. Ryan, for plaintiffs in error.

L. P. Shackleford, Alfred Sutro, and Pillsbury, Madison & Sutro, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge (after stating the facts as above). [1] The controlling question in this case is whether Applebaum, the defendant in the attachment suit had any interest in the attached property at the time of the levy of the attachment. Whether he had such an interest depends upon the construction to be placed upon the contracts entered into between himself and Johnston and the situation and relation of the parties with respect thereto at the time of the attachment; that is to say, the contracts provided for a succession of relations between the parties with respect to the working of the property, and these successive relations may tend to show what interest, if any, Applebaum had in the property.

The agreement of September 5, 1907, after reciting that Applebaum and Darud were lessees of a certain mining claim, and that Applebaum was desirous that Johnston should take full control, charge, and supervision of the working of said ground, provides that Johnston "is to advance the money necessary to pay the operating expenses now until the *said parties* hereto shall *commence to hoist pay.*"

It appears from the evidence that a small quantity of gold-dust was taken from the mine as early as September 14, 1907. There was also a small quantity taken on September 23, 1907, and there was evidence of a third clean-up in the fall of 1907, and then on May 5, 1908, the taking of the gold-dust from the mine was resumed and continued until the attachment was levied on May 29, 1908, at which time the value of the gold-dust taken from the mine amounted to the sum of $16,420.92. On June 3d another small quantity was taken, amounting to $261.50, making a total of $16,682.41.

In books kept by Johnston it appears that he cleaned up from the working of the mine gold-dust at the dates and in the amounts as follows:

| | Credits. | | |
|---|---|---|---|
| Sept. 14. | 4.55 Oz. Dust | | 78.50 |
| 23. | 15.83 " | | 273.06 |
| May 5. | 88.20 at 17.35 | | 1,521.45 |
| 9. | 168.44 17.40 | | 2,930.85 |
| 12. | 266.55 | | 4,737.97 |
| 15. | 101.94 | | 1,773.75 |
| 18. | 103.90 | | 1,807.86 |
| 23. | 57.60 | | 1,002.24 |
| 27. | 30.47 | | 530.18 |
| 29. | 101.44 " | | 1,765.05 |
| June 3. | 15.03 " | | 261.50 |
| Balance | | | $16,682.41 |

It is therefore not disputed that the first stage in the working of the mine—that is to say, the period prior to the time when the said "parties hereto shall commence to hoist pay"—had passed when the attachment was levied on May 29, 1907.

The agreement then provides:

"And thereafter all the profits of said mine *coming to the said parties hereto* shall be taken possession of by the said H. R. Johnston to reimburse him for the money so advanced, and until he shall be paid in full."

There was evidence tending to show that this stage had also been passed when the attachment was levied. Johnston had advanced money for the working of the mine; but the gold-dust taken out had fully reimbursed him for such advances. The agreement then provides:

"Thereafter and after the payment of the said money to the said H. R. Johnston so mentioned that all profits taken from said mine shall be paid to the said party of the first part herein until the sum of three thousand five hundred is paid, which sum is for the purpose of paying.the creditors of the said Samuel Applebaum."

The evidence tends to show that it was during this last stage in the working of the mine that the attachment was levied. It was after Johnston had been reimbursed for money advanced by him and when all the profits of the mine were to be paid to Applebaum for the purpose of paying his creditors until the sum of three thousand five hundred dollars had been paid him; but no money had been paid Applebaum under this provision of the contract. It was next provided:

"That thereafter all profits taken from said mine shall be divided between the parties hereto share and share alike."

For the purpose of this case it is not necessary to consider whether the working of the mine had reached the stage when Applebaum was interested in the working of the mine under this last provision of the agreement. It is sufficient if he was interested in the property and by reason of his relation to the working of the mine was a tenant in common of all the property under the preceding provision of the agree-

ment.  The next provision is applicable to the entire relationship of the parties to the property, and is as follows:

"And in consideration of the foregoing the said H. R. Johnston hereby agrees to take full control, management and supervision of said mine and premises and work and mine the same according to his best ability and endeavors in a minerlike manner and *for the joint profit and benefit of the parties hereto.*"

, It is further provided that:

"*This agreement shall continue and extend to the full term of the lay or lease agreement.*"

We have here in the whole contract successive relations carefully balancing the rights of each of the parties to an equality with the other in the joint enterprize of working the mine, but no money had been paid Applebaum under the provision providing for such payments. There does not seem to be much doubt that under this contract Applebaum and Johnston were tenants in common of all the property attached at the time the attachment was levied.  But on September 7, 1907, Applebaum executed an assignment of the lease to Johnston. Did this assignment change Applebaum's relation to the property?  A second agreement executed by the parties on that day appears to answer this question.  It provided:

"It is hereby mutually agreed by and between the parties hereto that the said agreement made and entered into on the 5th day of September, 1907, between the parties hereto shall be and remain in full force and effect and shall not in any way be affected by the assignment this day made."

In other words, as between Applebaum and Johnston Applebaum's relation to the property was to continue as before.  It was not to be in any way affected by the assignment.  If he was a tenant in common before the assignment, he continued a tenant in common after the assignment.  The fact that Johnston was in possession of the property was immaterial.  He was in possession for the interest and benefit of Applebaum as well as for himself.

"The defendant's interest in personal property need not, in order to its being subject to attachment, be several and exclusive.  An interest held by him in common with others may be attached; and the property may be seized and removed, though the rights of the other joint owners may thereby be impaired."  Drake on Attachment (5th Ed.) § 248.

[2] It is next contended by the plaintiffs in error that the second amended complaint did not state facts sufficient to constitute a cause of action for the reason that defendants did not allege that after the rendition of the judgment in the attachment suit a special execution was issued thereon to the marshal authorizing and commanding him to sell the attached property.  It is contended that until a valid order of sale had been made and incorporated in the judgment, and a special execution issued on such judgment and placed in the hands of the marshal, he was not lawfully authorized to demand of the plaintiffs in error the delivery of the attached property, or the payment of its value. The condition of the redelivery bond executed by Johnston and his sureties, and under which Johnston procured the release of the at-

tached property, was that in consideration of such redelivery Johnston and his sureties, jointly and severally, undertook and promised "to redeliver the said property or pay the value thereof to the United States marshal, to whom execution upon a judgment obtained by the plaintiffs in said action may issue."

Section 145 of the Alaska Code of Civil Procedure (Carter's Ann. Codes, p. 175), under which this redelivery bond was given, provides that:

"The marshal may deliver any of the property attached to the defendant, or to any other person claiming it upon his giving a written undertaking therefor, executed by two or more sufficient sureties, engaging to redeliver it or pay the value thereof to the marshal, to whom execution upon a judgment obtained by the plaintiff in that action may be issued."

There is no requirement here, either in the statute or in the bond, for a special execution. An execution was issued requiring the marshal to satisfy the judgment with interest out of the personal property of the judgment debtor, and to make sale thereof according to law. The marshal levied upon the property ordered to be sold by the judgment, and on no other property, and so made return upon the execution, with the further return that "said Johnston then and there neglected and refused to deliver said property or to pay the said value." This was sufficient to fix the liability of the defendants on the redelivery bond. No further or other demand was necessary or required. The plaintiffs in error, in support of their contention that this was not sufficient, cite the case of Gass v. Williams, 46 Ind. 253. In that case the question presented to the court upon a demurrer to a complaint was this:

"Can an action be maintained upon a redelivery bond under * * * the Code when upon final hearing only a personal judgment is required and the attachment is dissolved?"

The court answered this question in the negative. Nothing was said concerning the necessity of alleging in the complaint that a special execution had been issued as a condition precedent to liability upon the redelivery bond. The case, therefore, is not an authority for the position taken by the plaintiffs in error in this case.

The case of Lowry v. McGee, 75 Ind. 508, is also cited. The action in that case was for the possession of real estate. Each party to the action claimed title under a sheriff's deed executed upon a sale under an execution. The party holding the later deed in date claimed priority of title by reason of the fact that the suit upon which his judgment had been rendered was commenced with an attachment proceeding and the property had been attached prior to the date of the judgment in favor of the party holding the prior deed. But it appears that his judgment was in personam for the amount of his claim without any judgment in rem against the property, or any order whatever in relation to the property or attachment proceeding. His claim that the attachment lien was merged in the personal judgment could not therefore be sustained, and the court so held. The decision is not applicable to the present case.

The last case is that of Wright v. Manns, 111 Ind. 422, 12 N. E. 160. The action in that case was upon a redelivery bond given in an attachment suit where it was provided in the bond, in accordance with the statute in that behalf, that the party to whom the attached property had been delivered would "properly keep and take care of said property, and * * * on demand deliver to said sheriff * * * the personal property so attached." There was no allegation in the complaint upon this bond that the sheriff had made the demand required by the statute and provided for in the bond. The Supreme Court accordingly held that the demurrer to the complaint pointing out this defect should have been sustained by the trial court. The court held further that the statute required a special execution commanding the sheriff to sell the attached property, and that until such a special execution had come into the hands of the sheriff he was not authorized to make the demand. The complaint before the court in the present case is not open to the objection sustained in that case, and we are of opinion that under the Alaska statute a special execution is not required to fix the liability of the obligors on the redelivery bond where a judgment has been entered directing the sale of the attached property and the execution follows the direction of the judgment.

[3] It is finally contended that the clerk of the court in entering the default of the defendants in the attachment suit had no power or authority to enter other than a personal judgment against the defendants, and that in so far as the judgment ordered the sale of the attached property it was void. This contention cannot be sustained. The judgment shows on its face that the court, and not the clerk, ordered the attached property to be sold. The recital of the judgment in this behalf is as follows:

"And it further appearing to the court that certain property of the said defendant Samuel Applebaum has been attached in this action, to wit, all the right, title, and interest of the said Samuel Applebaum in and to the following described property (describing the property).

"It is further ordered and adjudged that the said property and the right, title, and interest of the defendant Samuel Applebaum therein, be sold to satisfy the plaintiffs' demands."

[4] It will be presumed that such an order was an order of the court; but further than this it was alleged in the complaint that after the default of Applebaum "was duly entered therein by the clerk of said court, and said clerk thereupon duly entered judgment therein against said Applebaum and Darud, a copy of which said judgment is hereunto annexed marked 'Exhibit C' and prayed to be read as a part hereof."

In their answer to the complaint the defendants did not deny this averment of the complaint. It therefore stands admitted and confessed and must be accepted as a fact that the judgment was duly entered. If duly entered, it was an order of the court, and the order of sale was an order of the court.

Finding no error in the record, the judgment of the District Court is affirmed.